14-1162
(Serial No. 11/363,419)

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

————————————

IN RE ROTH

————————————

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board**

————————————

**BRIEF OF APPELLANT ELDON ROTH**

————————————

Russell D. Culbertson
THE CULBERTSON GROUP, PC
3355 Bee Cave Road, Suite 604
Austin, Texas 78746
(512) 327-8932 (voice)
(512) 327-2665 (fax)
rculbertson@tcg-ipl.com

Date: February 18, 2014      *Attorney for Appellant*

# CERTIFICATE OF INTEREST

Counsel for Appellant Eldon Roth certifies the following:

1.    The full name of every party or amicus represented by me is:

       Eldon Roth

2.    The name of the real party in interest represented by me is:

       Freezing Machines, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus represented by me are:

       None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

       Russell D. Culbertson
       The Culbertson Group, P.C.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF RELATED CASES .................................................. 1

STATEMENT OF JURISDICTION ..................................................... 2

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF THE CASE ............................................................... 4

STATEMENT OF THE FACTS ............................................................. 8

    A.    The Application ................................................................... 8

    B.    Skepticism of Experts and the Results Obtained By the Invention ......................................................................... 10

    C.    Predictability of Results ...................................................... 12

    D.    The Cited Prior Art .............................................................. 13

        1.    *The 795 Patent* ......................................................... 13

        2.    *Ludwig* ...................................................................... 15

        3.    *Langen* ...................................................................... 15

    E.    The Examination and Board Decision ................................. 16

SUMMARY OF THE ARGUMENT ..................................................... 18

ARGUMENT ........................................................................................ 19

I.    Standard of Review ............................................................................ 19

i

II.  The Obviousness Rejection of All Claims of the Application Should
     Be Reversed ................................................................................... 19

     A.  The Board Erred in Finding that the Results of Applying the
         Injection Technique of *Ludwig* and *Langen* to Inject
         Ammonium Hydroxide Solutions into Large Cuts of Meat Were
         Predictable ................................................................................ 20

     B.  The Board Erred in Finding that Applying the Injection
         Technique of *Ludwig* and *Langen* to Inject Ammonium
         Hydroxide Solutions into Large Cuts of Meat Represents a
         Simple Substitution of One Known Application Technique for
         Another Known Application Technique ..................................... 26

     C.  The Board Erred in Discounting the Objective Evidence of
         Non-Obviousness ....................................................................... 27

         1.  The Board Applied an Incorrect Legal Standard to Find
             No Factual Showing of Unexpected Results ......................... 28

         2.  The Board Failed to Consider the *795 Patent* as a Whole
             in Dismissing the Objective Evidence as Unpersuasive in
             Showing Unexpected Results ............................................... 30

         3.  The Board Failed to Consider the Effect of the Objective
             Evidence on the Purported *Prima Facie* Case of
             Obviousness ......................................................................... 32

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................... 34

ADDENDUM (FEDERAL RULE 28(a)(12)) ....................................................... 35

     BOARD DECISION ................................................................................. 36

     DECISION ON REQUEST FOR REHEARING ........................................... 44

PROOF OF SERVICE ....................................................................................... 49

CERTIFICATE OF COMPLIANCE (FEDERAL RULE 32) ................................ 50

# TABLE OF AUTHORITIES

## <u>CASES</u>

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009)............................................................................................24

*In re D'Ancicco*, 439 F.2d 1244 (CCPA 1971)....................................................29

*In re Freeman and Burden*, 474 F.2d 1318, 1324 (CCPA 1973)...........................29

*In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000) .....................................19

*In re Klosak*, 455 F.2d 1077 (CCPA 1971) .........................................................29

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-17 (2007) ...........................20, 26

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007).........................32

*Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013)..................32

*Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)..............................................26

*Sud-Chemie, Inc. v. Multisorb Techs, Inc.,* 554 F.3d 1001, 1009 (Fed. Cir. 2009) 32

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1552 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984) ..........................................................30

# STATUTES

28 U.S.C. §1295(a)(4) ................................................................................ 2

35 U.S.C. §103 ........................................................................................... 5

35 U.S.C. §134 ........................................................................................... 2

35 U.S.C. §141 ........................................................................................... 2

35 U.S.C. §142 ........................................................................................... 2

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding below was previously before this or any other appellate court. There are no other cases known to counsel to be pending in this or any other court that will be directly affected by this Court's decision in this appeal.

The patent application which is the subject of this appeal is a sibling[1] of U.S. Patent Application Serial No. 10/951,076 which was the subject of the appeal before this Court entitled In re Roth, case No. 2009-1223, for which judgment without opinion was entered pursuant to Rule 36 on October 14, 2009. The panel for case No. 2009-1223 was made up of Circuit Judges Rader, Archer, and Gajarsa.

---

1 The application which is the subject of this appeal, U.S. Patent Application Serial No. 11/363,419, is a continuation of U.S. Patent Application Serial No. 10/379,761. U.S. Patent Application Serial No. 10/951,076 (the subject of In re Roth case No. 2009-1223) was a continuation-in-part of U.S. Patent Application Serial No. 10/379,761.

1

# STATEMENT OF JURISDICTION

Following an appeal from the Examiner's rejection to the United States Patent and Trademark Office Patent Trial and Appeal Board (the "Board") under 35 U.S.C. §134, the Board issued a Decision on Appeal entered June 21, 2013 (the "Decision") and a Decision on Request for Rehearing entered on September 18, 2013 (the "Rehearing Decision"). The Rehearing Decision constitutes a final decision of the Board. Appellant timely filed a notice of appeal under 35 U.S.C. §142 on November 7, 2013. This Court has jurisdiction pursuant to 28 U.S.C. §1295(a)(4) and 35 U.S.C. §141.

## STATEMENT OF THE ISSUES

1.    Whether substantial evidence supports the Board's finding that the results of the proposed combination of prior art were predictable.

2.    Whether substantial evidence supports the Board's finding that applying the injection technique of the secondary prior art references for the treatment specified in the primary reference represents a simple substitution of one known application technique for another known application technique.

3.    Whether the Board erred in discounting the objective evidence of non-obviousness.

## STATEMENT OF THE CASE

This appeal arises from the examination of U.S. Patent Application Serial No. 11/363,419 (the "Application") by inventor Eldon Roth. The Application is a continuation of U.S. Patent Application No. 10/379,761, which was issued as U.S. Patent No. 7,022,361 on April 4, 2006.

The Application is directed to a process which addresses the problem of improving the quality of large cuts of meat such as steaks, roasts, or larger cuts from which steaks and roasts are separated. After much experimentation and testing, Mr. Roth found that ammonium hydroxide solution could be injected into the interior of a cut of meat to increase the pH within the interior of the meat without damaging the meat. In particular, Mr. Roth discovered that ammonium hydroxide could be injected into the interior of a cut of meat without leaving the meat with an ammonia odor. This discovery was surprising because ammonia and ammonium hydroxide had previously been used as a surface treatment for ground meat and large cuts of meat, but these prior treatments had to be carefully controlled to prevent the ammonia-based material from damaging the meat and leaving the surface-treated meat with an ammonia odor. It had long been known at the time of Mr. Roth's present invention that the contact time between the ammonia-based treatment material and the surface of the meat had to be limited in

4

order to prevent the treatment from damaging the meat and imparting an ammonia odor to the meat.

The Examiner rejected all of the claims in the Application under 35 U.S.C. §103 based U.S. Patent No. 5,871,795 (the "*795 Patent*"), also by Mr. Roth, as combined with U.S. Patent No. 5,436,017 ("*Ludwig*") and U.S. Patent No. 5,012,728 ("*Langen*")(the Examiner's combination of the *795 Patent*, *Ludwig*, and *Langen* will be referred to herein as the "Proposed Combination"). In particular, the claims are all rejected on the rationale that it would have been obvious to substitute a subsurface injection technique disclosed in *Ludwig* and *Langen* (for injecting sodium citrate solutions, brines, pickling fluids or meat paste) for a surface treatment technique described in the *795 Patent*. The treatment technique in the *795 Patent* was limited to applying a pH increasing gas (which may include ammonia or atomized ammonium hydroxide) to just the surfaces of meat products. According to the rejections the substitution of the subsurface injection technique from *Ludwig* and *Langen* for the surface treatment technique described in the *795 Patent* results in a process in which the surface treatment gas or gas mixture of the *795 Patent* is injected into the interior of a large cut of meat, thereby arriving at the claims of the Application. In making the rejection based on the substitution of an injection technique from the prior art for a surface treatment of a different

5

treatment material, the Examiner made no finding on the predictability of the result of the Proposed Combination.  However, Appellant submitted objective evidence in the form of declarations from experts showing that the results of injecting ammonium hydroxide as claimed were unexpected and surprising and produced a commercially successful product.  This objective evidence of unexpected and surprising results together with evidence of unpredictability in the *795 Patent* itself and other prior art shows overwhelmingly that the result of the Proposed Combination was not predictable, and thus that there is no rational basis to support the Proposed Combination to make out the obviousness rejection.

In sustaining all of the Examiner's rejections, the Board adopted the Examiner's findings of fact and conclusions of law.  The Board also discounted the evidence of unexpected results on the ground that Appellant made no factual showing of unexpected results and that disclosure in the *795 Patent* regarding the treatment of ground meat showed that the result of injecting large cuts of meat was "not unexpected."  The Board also discounted the evidence of unexpected results and commercial success on the ground that the objective evidence did not overcome the strong *prima facie* showing of obviousness.  However, the Board's finding that Appellant made no factual showing of unexpected results is based on an incorrect legal standard and is plainly incorrect.  The Board's finding that

6

Appellant's objective evidence is unpersuasive of unexpected results in view of

certain disclosure in the *795 Patent* ignores contrary disclosure in that patent and

elsewhere in the prior art.  Also the Board's finding that the objective evidence did

not overcome a strong *prima facie* showing of obviousness fails to appreciate that

the objective evidence completely undermines the rationale supporting the

obviousness rejection.

Throughout the course of proceedings below, first the Examiner and then the

Board consistently focused narrowly on the mechanical substitution of the

injection technique from the *Ludwig* and *Langen* references for the surface

treatment disclosed in the *795 Patent* to reach the claimed invention.  This narrow

focus by the Examiner and Board without considering the prior art references as a

whole was perhaps due to the simplicity of the invention.  Whatever the reason for

the narrow focus and exclusion or discounting of contrary evidence, when the prior

art and declaration evidence submitted by Appellant are properly considered, the

record overwhelmingly shows that the results of the claimed invention were

unexpected and thus not predictable.  Because the Proposed Combination is made

to arrive at those same claims, the record also shows that the results of the

Proposed Combination too were unexpected and thus not predictable.  Thus the

rejections based on the Proposed Combination are in error and should be reversed.

# STATEMENT OF THE FACTS

## A.    The Application

The Application as amended in the course of prosecution includes claims 1-10 and 12-20, all of which were rejected by the Examiner and are the subject of this appeal.  A3.  The Application includes three independent claims, claims 1, 7, and 14.

Claim 1 reads as follows:

> 1.    A method for treating a meat product, the method including:
>
> (a)    inserting a number of injection conduits into the meat product at spaced apart locations across an area of the meat product, each injection conduit including a respective fluid communication structure such that the step of inserting the number of injection conduits into the meat product positions the respective fluid communication structure of each injection conduit within an interior of the meat product, the meat product comprising a steak, roast, or filet, or a carcass portion larger than an individual steak, roast, or filet; and
>
> (b)    forcing an ammonium hydroxide solution through each respective injection conduit and fluid communication structure into the interior of the meat product.  A592.

Claim 7 is similar to claim 1 but describes the injection conduit differently and also requires that the treatment material includes ammonium hydroxide solution having a pH in a range from 8.0 to 12.0.

> 7.    A method including:
>
> (a)    inserting an injection conduit into a meat product so that a fluid communication structure of the injection conduit is positioned

8

within an interior of the meat product, the meat product comprising a steak, roast, or filet, or a carcass portion larger than an individual steak, roast, or filet; and

(b) forcing a treatment material into the interior of the meat product through the fluid communication structure of the injection conduit, the treatment material including ammonium hydroxide solution having a pH in a range from 8.0 to 12.0. A593.

Claim 14 is similar to claim 7 but refers to an ammonia-based pH modifying material and requires injecting the material in an amount effective to increase the pH within the interior of the meat product to a pH above approximately 6.0.

14. A method including:

(a) inserting an injection conduit into a meat product so that a fluid communication structure of the injection conduit is positioned within an interior of the meat product, the meat product comprising a steak, roast, or filet, or a carcass portion larger than an individual steak, roast, or filet; and

(b) forcing an ammonia-based pH modifying material into the interior of the meat product through the fluid communication structure of the injection conduit in an amount effective to increase the pH at one or more points within the interior of the meat product to a pH above approximately 6.0. A594-95.

The "ammonia-based pH modifying material" referenced in claim 14 is defined in the Application as any material that, when added to a meat product, results in an ammonium hydroxide solution in the meat product. A26.

A common thread among each of independent claims 1, 7, and 14 is the requirement of forcing an ammonium hydroxide solution (or an ammonia-based pH modifying material in the case of claim 14) into the interior of the meat product

9

through an injection conduit that has been inserted into the meat product.  In each

case, the meat product comprises a steak, roast, filet, or larger cut of meat.  In other

words, the claims require injecting an ammonium hydroxide solution (or an

ammonia-based pH modifying material in the case of claim 14) into the interior of

a meat product comprising a steak, roast, filet, or larger cut of meat.  For the sake

of brevity, the type of meat product to which the present claims are limited may be

referred to herein simply as a "cut of meat."


**B.    Skepticism of Experts and the Results Obtained By the Invention**

Meat products produced according to the injection technique claimed in the

Application were objectively tested and were surprisingly found to have desirable

organoleptic qualities compared to control products.  A466-67.  In particular, the

meat products produced according to the claimed injection technique were found to

have no ammonia odor either upon opening the packages in which the products

were contained, during separation of individual cuts for cooking, during cooking,

or after cooking.  A467.  Beyond the organoleptic testing, products produced

according to the claimed injection technique have been successful commercially.

A527-29.  This commercial success serves to verify the surprising result obtained

by the invention. That is, products treated according to the present invention would not likely have been commercially successful if they had reeked of ammonia.

The thought of injecting treatment materials as claimed in the Application was surprising to experts in the field of meat processing for several reasons. Based on his previous experience with ammonia surface treatments for ground meat such as those disclosed in the *795 Patent*, one expert believed that injecting ammonium hydroxide into the interior of a cut of meat as claimed in the Application would have left the treated product with a strong ammonia odor, and therefore unusable. A458-59. Another expert in the field of meat processing and organoleptic testing felt that injecting ammonium hydroxide into the interior of a cut of meat as claimed would leave the meat with an objectionable ammonia odor based on the highly odorous properties of ammonia and the fact that the contact time for the treatment material could not be controlled once the material was injected. A463; A468-69. Furthermore, because ammonia and ammonium hydroxide had previously been used to inhibit types of bacteria which are not generally found in the interior of the claimed types of meat products, at the time of the invention there was no reason to inject ammonium hydroxide into the interior of these types of meat products. A458-459.

## C.    Predictability of Results

The fact that injecting ammonium hydroxide as claimed in the Application produced desirable (A467) and commercially successful (A527-29) products with no ammonia odor despite the expectations and skepticism of experts (A458-59) demonstrates that the result of the claimed invention was unpredictable.  Because the rejections are all based on a combination of prior art references in an effort to reach the subject matter of the claims of the application, the objective evidence of unexpected results demonstrates that the results of the Proposed Combination were also not predictable.

Beyond the objective evidence bearing on the predictability of the claimed invention (and Proposed Combination), the prior art of record in the Application also suggests that it was unpredictable that the claimed process would produce a product without an undesirable ammonia odor.  In particular, the *795 Patent* discloses that the contact time between the ammonia-based treatment material in that reference and the meat being treated should be limited to prevent the treatment material from damaging the meat.  A109-10.  The *795 Patent* also discloses limiting the contact time by applying the ammonia-based gaseous treatment material at relatively high pressure for an operating period of time and then removing the treatment material from contact with the meat being treated.  A109.

12

This disclosure in the *795 Patent* regarding limiting contact time suggests that it would not be appropriate to apply ammonium hydroxide in a manner that would make it difficult or impossible to limit contact time, such as by injecting the material into the interior of a cut of meat as claimed in the Application. U.S. Patent No. 3,023,109 to Hines ("*Hines*") discloses applying ammonia gas to red meat to improve the red color of the meat, but notes that the treatment time and concentration of ammonia in the treatment gas must be limited to avoid imparting an ammonia odor to the treated meat. A533. The *Hines* disclosure from 1962 regarding limiting contact time also would have suggested to one working at the time of the present invention that ammonium hydroxide should not be injected into the interior of the meat product. One of ordinary skill in the art would have appreciated that such injection would limit the ability to control contact time.

**D.    The Cited Prior Art**

     **1.    The *795 Patent***

The *795 Patent* discloses applying a pH increasing gas under an operating pressure to the surfaces of a meat product to help inhibit microbe growth. A109. For a ground meat, the surfaces to which the pH increasing gas is applied are all of the surfaces, including surfaces of the individual pieces of meat making up a mass of ground meat which may be in the interior of the mass of ground meat. A109.

13

The treatment disclosed in the *795 Patent* is nevertheless a surface treatment intended only to produce a desired pH increase at the surface of the treated meat. A109. The *795 Patent* defines the gaseous treatment material "pH increasing gas" as a purely gaseous material or an atomized pH increasing material such as ammonium hydroxide combined with a carrier gas. A109. The only application method described in the *795 Patent* for applying the pH increasing gas to large cuts of meat such as those specified in the claims at issue in this Appeal is to place the cut of meat in an enclosure and place the pH increasing gas in the atmosphere within the enclosure. A112-13. The *795 Patent* discloses that the contact time between the pH increasing gas and meat being treated should be limited to prevent the pH increasing gas from damaging the meat, and that the contact time may be reduced to acceptable levels by applying the pH increasing gas at relatively high pressure. A109-10; A111. To limit contact time, the *795 Patent* discloses removing the pH increasing gas from the treated meat after the pH increasing gas is applied for the operating period of time under the operating pressure. A101; A111. For ground meat, the *795 Patent* discloses removing the pH increasing gas by agitating the treated meat in a vessel and applying a vacuum and heat. A102; A112. The *795 Patent* discloses that where the pH increasing gas comprises ammonia gas, the desired pH increase at the surface of the meat product being

treated is produced by the ammonia gas going into solution in water included at the meat product surface to produce ammonium hydroxide at the meat product surface. A111.

### 2.    *Ludwig*

*Ludwig* discloses that sodium citrate solutions buffered to a pH of between 5.4 and 5.8 may be injected into red meat and poultry to produce a bacterial growth inhibiting effect equivalent to sodium lactate with improved color and flavor. A171.  Sodium citrate is odorless and has a salty, slightly tart taste, whereas the ammonium hydroxide required in Appellant's claims exhibits an ammonia odor. A192; A185.  *Ludwig* mentions that sodium lactate had been injected into large pieces of meat as an antibacterial agent (A171), but does not disclose or suggest any other material for injection, and in particular does not disclose or suggest injecting ammonium hydroxide solution into the interior of a cut of meat.

### 3.    *Langen*

*Langen* discloses an injection system in which pieces of meat are impaled on injection needles and injected with brines, pickling fluids, or meat paste.  A93; A96. *Langen* does not disclose or suggest applying the injection system to inject ammonium hydroxide into the interior of any meat product.

## E. The Examination and Board Decision

The Examiner rejected all of the claims of the Application. A537. The rejections as to the independent claims were based on the Proposed Combination. A537. The Examiner found that it would have been obvious to one of ordinary skill in the art to modify the *795 Patent* by substituting the conventional injection technique described in *Ludwig* and *Langen* for the surface treatment technique disclosed in the *795 Patent*. A218. The Examiner also found the evidence of unexpected results presented in the Dickson and Morgan Declarations was unpersuasive because the properties of ammonium hydroxide solution were well known prior to the invention of the *795 Patent* and yet that patent discloses "treatment of the exterior and interior of a ground meat product with ammonium hydroxide solution." A480. This ground for discounting the objective evidence of unexpected results completely ignores that the *795 Patent* also discloses the importance of limiting contact time between the treatment gas and the surface of the meat being treated to avoid imparting an ammonia odor, the fact that the *795 Patent* clearly discloses treating only the surface of meat product. A109; A592-95. The Examiner also found the evidence regarding the commercial success of the product produced according to the claimed invention did not overcome the "strong case of obviousness." A481. However, this conclusion shows that the Examiner

missed the point of the commercial success evidence in showing that the claimed method did in fact produce a desirable product despite the skepticism of experts. A467; A468; A458-59.

The Board adopted the Examiner's "simple substitution" rationale to support the combination of the *795 Patent* with *Ludwig* and *Langen*.  A4.  The Board went beyond the Examiner regarding the evidence of unexpected results finding that the Appellant had failed to make a factual showing of unexpected results.  A5.  This finding is simply incorrect and is based on an incorrect standard for showing evidence of unexpected results as will be described below in section II. C. 1. Furthermore, the Board failed to consider the effect of the evidence of unexpected results on the purported *prima facie* case of obviousness as will be discussed below in section II. C. 3.  The Board also found no evidence of commercial success, and failed to appreciate the purpose of the sales evidence as showing that the claimed method produced a desirable product despite the skepticism of experts.

## SUMMARY OF THE ARGUMENT

No substantial evidence supports the Board's finding that the results of the Proposed Combination were predictable. The Board erred in finding that the *795 Patent* shows that the results of the Proposed Combination were predictable because the *795 Patent* suggests that applying ammonium hydroxide in a way in which contact time cannot be limited would damage the meat. Also, no substantial evidence supports the Board's finding that applying the injection technique of *Ludwig* and *Langen* in place of the surface treatment in the *795 Patent* represents a simple substitution of one known application technique for another to produce the same results. The Board erred by failing to make any finding that the subsurface injection technique of *Ludwig* and *Langen* was a known technique for applying treatment materials to the surface of a meat product to be treated. Furthermore, the Board erred for several reasons in discounting Appellant's objective evidence of non-obviousness. First, the Board applied an incorrect legal standard to find that Appellant had shown no evidence of unexpected results. Second, the Board failed to consider the *795 Patent* as a whole when the Board dismissed the objective evidence of non-obviousness as unpersuasive in showing unexpected results. Third, the Board failed to consider the effect of the objective evidence on the purported *prima facie* case of obviousness on which all of the rejections are based.

18

**ARGUMENT**

## I.    Standard of Review

Appellant raises both legal and factual errors by the Board.  Questions of

fact are reviewed for substantial evidence, questions of law are reviewed de novo.

*In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000).  Substantial evidence to

support a finding of fact by the Board is such relevant evidence as a reasonable

mind might accept to support the finding, taking into account evidence that both

justifies and detracts from the finding.  *id.* at 1312.

## II.    The Obviousness Rejection of All Claims of the Application Should Be Reversed

Claims 1 and 7 of the Application require positioning an injection conduit

into the interior of a cut of meat comprising a steak, roast, filet or larger cut and

forcing an ammonium hydroxide solution into the interior of the meat through that

injection conduit, the ammonium hydroxide solution having a pH of between 8.0

and 12.0 in the case of claim 7.  A592; A593.  Claim 14 of the Application requires

positioning an injection conduit into the interior of a cut of meat comprising a

steak, roast, filet or larger cut and forcing an ammonia-based pH modifying

material into the interior of the meat through that injection conduit to produce a pH

in the meat product of 6.0 of more.  A594-95.  The Board found these claims

19

would have been obvious because (1) one of ordinary skill in the art would have, using no more than ordinary creativity, substituted the injection technique of *Ludwig* and *Langen* for the surface treatment of the *795 Patent*, and (2) the results of that substitution were predictable. A5. Neither of these findings is supported by substantial evidence. Furthermore, the objective evidence bearing on predictability of the results of the Proposed Combination was incorrectly discounted.

### A. The Board Erred in Finding that the Results of Applying the Injection Technique of *Ludwig* and *Langen* to Inject Ammonium Hydroxide Solutions into Large Cuts of Meat Were Predictable

In order to support the substitution of the injection technique disclosed in *Ludwig* and *Langen* for the surface treatments described in the *795 Patent* to arrive at the claimed invention, it is necessary for the record to show that the result of the substitution was predictable at the time of the invention. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)("a court must ask whether the improvement is *more than a predictable use of prior art elements* according to their established functions")(Emphasis added).

The Board found that since the properties of ammonium hydroxide solution were well known prior to the invention in the *795 Patent* and since the *795 Patent* nevertheless discloses treatment of the interior and exterior of ground meat with

ammonium hydroxide, the results of the claimed ammonia injection was "not unexpected." A12. In other words, the Board relied on the disclosure in the *795 Patent* regarding treating ground meat to find that the result of the Proposed Combination would have been predictable. However, the reliance on disclosure from the *795 Patent* regarding treating ground meat ignores the fact that the *795 Patent* discloses treating only the surfaces of ground meat pieces. Even more importantly the reliance on disclosure from the *795 Patent* regarding treating ground meat ignores disclosure in the *795 Patent* regarding limiting treatment material contact time. This disclosure in the 795 Patent regarding limiting treatment material contact time suggests that the result of the Proposed Combination would not have been predictable. The prior art and declaration evidence in fact provide overwhelming evidence showing that the result of the Proposed Combination would not have been predictable at the time of the present invention.

The *795 Patent* discloses that the contact time between the meat surfaces and the "pH increasing gas" must be limited in order to prevent the treatment material from damaging the meat. A109-10. The treatment process disclosed in the *795 Patent* is absolutely and fundamentally limited to applying the treatment material to the surfaces of the meat product, including the surfaces of the

21

individual pieces of ground meat making up a mass of ground meat. A109. *Hines* also discloses that ammonia gas surface treatments had to be limited in time to prevent the meat from acquiring an ammonia odor. A533. This disclosure from the prior art suggests applying ammonium hydroxide in any fashion in which the contact time cannot be limited, such as injecting the ammonium hydroxide into the interior of the cut of meat, would leave the meat with an ammonia odor. Thus this disclosure in the prior art predicts a result opposite to the result actually obtained by the invention as shown in the declaration of Dr. Morgan and in the declaration of Mr. Jochum. A467; A527-29.

The declaration evidence from Dr. Dickson shows skepticism of an expert in the field that injecting ammonium hydroxide as claimed in the Application would produce an acceptable product. Dr. Dickson's skepticism was based on his previous experience with ammonia gas surface treatments for ground meat such as disclosed in the *795 Patent*. Specifically, Dr. Dickson believed that injecting ammonium hydroxide into the interior of a cut of meat would leave the meat with an ammonia odor because injecting the ammonium hydroxide would leave no way to limit the contact time with the meat. A458-59. This evidence from Dr. Dickson does not merely state a conclusion. Rather, this evidence from Dr. Dickson

recounts his impression upon learning of the inventor's proposal to inject ammonium hydroxide and also states the reason for that impression.

The declaration evidence from Dr. Morgan shows that another expert in the field believed injecting ammonium hydroxide as claimed in the Application would leave the meat with an ammonia odor. A468-69. Again this evidence does not merely state a conclusion drawn by the expert, but states the impression of the expert upon learning of the inventor's proposal to inject ammonium hydroxide into the interior of a cut of meat, and explains the basis of that impression.

Despite this reasoned skepticism of experts in the field and despite the warning in the *795 Patent* and *Hines* regarding limiting the contact time between the ammonia-based treatment material and the meat being treated, the injection of ammonium hydroxide as claimed in the Application produces an objectively desirable product with no ammonia odor as established by the declaration of Dr. Morgan. A468-69. The declaration of Mr. Jochum regarding the commercial success of products produced according to the claimed process also shows that the process actually produces an objectively desirable product despite the skepticism of the experts and the warning regarding limiting contact time in the *795 Patent* and *Hines*. A527-29.

The Board also found that using the injection methods of *Ludwig* and *Langen* in place of the surface treatments disclosed in the *795 Patent* would have produced predictable results of reducing bacterial growth using the antibacterial ammonium hydroxide solution of the *795 Patent*. A5. However, the predictability required in a rationale for combining references includes predictability that the combination would have worked for its intended purpose. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009). Working for its intended purpose in the context of meat product treatments must include working in a way which results in a desirable product and not just a product in which bacteria has been controlled. After all, one can imagine any number of treatment materials that might be effective for controlling bacteria in a meat product, but which would also damage the meat in some way, either in terms of appearance, taste, or odor. Thus the predictability necessary for supporting the Proposed Combination must necessarily encompass predictability of a desirable treated product.

To summarize, the evidence in the record supporting a finding that the results of the Proposed Combination were not predictable include (1) the disclosure in the *795 Patent* that the contact time between the ammonia-based treatment material and the surfaces of the meat being treated must be limited to avoid

24

damaging the meat being treated (A109-10), (2) the disclosure in *Hines* that the contact time between the ammonia gas and the surface of the meat being treated must be limited to avoid imparting an ammonia odor to the meat (A533), (3) the objective evidence of unexpected results of the treatment process claimed in the Application (based on the skepticism of experts Dr. Dickson and Dr. Morgan, and the organoleptic test results reported by Dr. Morgan and the commercial success of the treated product reported by Mr. Jochum (A458-59; A468-69; A467; A527-29)) all show that one of ordinary skill in the art acting at the time of the invention would not have seen the results of the Proposed Combination as predictable. To the contrary, one of ordinary skill at the time would have predicted that the Proposed Combination would have produced a product reeking of ammonia and thus of no commercial value.

Against this evidence that the result of the Proposed Combination was not predictable stands the disclosure in the *795 Patent* that it was known to apply the ammonia-based treatment material disclosed in that patent to the **surfaces** of **pieces of ground meat**. A12; A109. This is the sole piece of evidence supporting the Board's finding that the result of the Proposed Combination (injecting ammonium hydroxide into the interior of a cut of meat such as a steak, roast, or filet) was predictable of producing a desirable product.

25

The Board's finding of predictability is simply not supported by substantial evidence. The disclosure in the *795 Patent* regarding applying the treatment material in that patent to surfaces of ground meat, to the extent it is relevant at all to the issue of predictability as to injecting ammonium hydroxide as claimed, is not such evidence a reasonable mind might accept to support the finding of predictability. Because the obviousness rejections are dependent upon this finding of predictability, the rejections are in error and should be reversed.

**B.      The Board Erred in Finding that Applying the Injection Technique of *Ludwig* and *Langen* to Inject Ammonium Hydroxide Solutions into Large Cuts of Meat Represents a Simple Substitution of One Application Technique for Another Known Application Technique**

Where an obviousness rejection is based on a substitution of one element from the prior art for another element in the prior art, it is necessary that the two elements be known alternatives for producing **the same result**. See *KSR* 550 U.S. at 417 ("when a patent "simply arranges old elements with each performing the *same function* it had been known to perform" and yields no more than one would expect from such an arrangement, the combination is obvious")(citing *Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)(Emphasis added). In this case, the rejections are all supported by substituting the injection technique disclosed in

26

*Ludwig* and *Langen* for the surface application technique disclosed in the *795 Patent*. That is, the rejections are based on substituting the injection technique disclosed in *Ludwig* and *Langen* which injects material into the interior of large cuts of meat for the surface application technique of the *795 Patent* which specifically and intentionally limits the contact between the treatment material and the treated meat to just the surface of the meat. However, there is no evidence in the record to suggest the subsurface injection technique disclosed in *Ludwig* and *Langen* was a known alternative for applying material **to the surface** of a cut of meat. This lack of evidence is a fatal flaw in the rationale supporting the rejection. Because evidence that the injection technique disclosed in *Ludwig* and *Langen* was a known alternative for a surface treatment on the *795 Patent* is a required part of the rationale to support the rejection, the complete lack of such evidence compels a conclusion that the rejection is not supported by substantial evidence and is therefore in error.

## C.   The Board Erred in Discounting the Objective Evidence of Non-Obviousness

The Board went to great lengths to discount the objective evidence of non-obviousness present in the case. At the outset, the Board found that Appellant had made no showing of unexpected results. A5. However, this finding was based on

27

an incorrect statement of the legal standard for showing unexpected results as will be described in subsection II. C. 1. below.  Beyond the finding that Appellant had made no showing of unexpected results, the Board found that Appellant's declaration evidence was not persuasive to establish unexpected and surprising results in view of disclosure in the *795 Patent* regarding prior art treatments of ground meat.  A12.  However, this finding ignores disclosure in the *795 Patent* indicating that the results of the proposed combination would have been unexpected as will be discussed below in subsection II. C. 2.  Not to leave any base uncovered, the Board went on to find that to the extent the record shows evidence of unexpected results, such evidence was not sufficient to overcome the strong *prima facie* case of obviousness.  A8.  This finding however fails to consider the effect of the objective evidence on the purported *prima facie* case of obvious (namely, the rationale applied to support the Proposed Combination).

### 1.     The Board Applied an Incorrect Legal Standard to Find No Factual Showing of Unexpected Results

The Board found no factual showing of unexpected results in the record based in part on the proposition that a showing of unexpected results requires "establishing that the difference between the claimed invention and the closest prior art was an unexpected difference."  A5.  This proposition confuses the

invention with the results of the invention and is an incorrect statement of the law.

Probative evidence of unexpected results requires a showing that (1) there actually

is a difference between the results obtained through the claimed invention and

those of the prior art, and (2) the difference actually obtained would not have been

expected by one skilled in the art at the time of invention. *In re Freeman and*

*Burden*, 474 F.2d 1318, 1324 (CCPA 1973) (citing *In re Klosak*, 455 F.2d 1077

(CCPA 1971) and *In re D'Ancicco*, 439 F.2d 1244 (CCPA 1971)).

In this case, the claimed invention results in an ammonium hydroxide

solution being injected into the interior of a cut of meat. The Examiner conceded

that the *795 Patent* does not disclose injecting ammonium hydroxide into the

interior of a meat product as claimed. A217. None of the other references disclose

injecting ammonium hydroxide into the interior of a cut of meat as claimed. The

declaration of Dr. Morgan shows that meat products which had been injected with

ammonium hydroxide as claimed resulted in a product which surprisingly had no

ammonia odor. A467. Thus the record shows a difference between the results

obtained through the claimed invention and those of the prior art. The declaration

of Dr. Dickson shows that even an expert in the field who was familiar with the

surface treatment disclosed in the *795 Patent* expected that injecting ammonium

hydroxide as claimed in the Application would have damaged the meat by leaving

it with an ammonia odor.  A458-59.  Thus the record overwhelmingly shows that

the results obtained by the claimed invention would not have been expected by one

of ordinary skill in the art at the time of the invention.

Because the record shows that the claimed invention produced unexpected

results, the finding of the Board to the contrary is in error.

**2.     The Board Failed to Consider the _795 Patent_ as a Whole in Dismissing the Objective Evidence as Unpersuasive in Showing Unexpected Results**

The Board's sole ground for finding that the objective evidence was

unpersuasive to show unexpected results in producing a desirable product was that

the properties of ammonium hydroxide solution were well known prior to the

invention disclosed in the _795 Patent_ and still that patent discloses "treatment of

the exterior and interior of a ground meat product with ammonium hydroxide

solution."  A6; A12.  This focus on one teaching of the _795 Patent_ to the exclusion

of disclosure relevant to the issue of unexpected results and predictability is

contrary to the law.  _See W.L. Gore & Associates, Inc. v. Garlock, Inc._, 721 F.2d

1540, 1552 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984)("...the district court

erred...in considering the references in less than their entireties....").  The

disclosure in the _795 Patent_ that the contact time between an ammonium

30

hydroxide bearing gas and the surface of the meat must be limited to avoid

damaging the meat product is highly relevant to whether the results of the claimed

invention were unexpected.  This disclosure in the *795 Patent* detracts from a

finding that the objective evidence failed to show unexpected results.  The reason

for this detraction is that the disclosure suggests the meat would be damaged if

ammonium hydroxide were applied in a way in which contact time could not be

controlled, yet the evidence from Dr. Morgan and Mr. Jochum shows that

ammonium hydroxide may be injected to produce a desirable product with no

ammonia odor.  Furthermore, this disclosure in the *795 Patent* regarding limiting

contact time also helps explain Dr. Dickson's skepticism that injecting ammonium

hydroxide into the interior of a cut of meat would produce an acceptable product.

Specifically, Dr. Dickson stated that it was in part his familiarity with the surface

treatment process disclosed in the *795 Patent* and the requirement of limiting

ammonia-based treatment material contact time that led him to the expectation that

injecting ammonium hydroxide into the interior of a cut of meat would damage the

meat by leaving it with an ammonia odor.  A458-59.  Failure to consider this

disclosure in the *795 Patent* (and similar evidence in *Hines*) which detracts from

the Board's position on whether the objective evidence shows unexpected results is

31

contrary to the law and represents a fatal flaw in the Board's legal conclusion of obviousness.

**3.     The Board Failed to Consider the Effect of the Objective Evidence on the Purported *Prima Facie* Case of Obviousness**

According to the Board, to the extent Appellant made any showing of unexpected results and commercial success, that showing did not overcome the "strong" *prima facie* case of obviousness.  A8.  The precedent is replete with statements to the effect that a given showing of objective evidence failed to overcome a strong *prima facie* case of obviousness.  *See e.g. Sud-Chemie, Inc. v. Multisorb Techs, Inc.,* 554 F.3d 1001, 1009 (Fed. Cir. 2009); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007).  However, it is unclear what this "strong" *prima facie* case concept means in the context of the present case in which the objective evidence bears directly on the elements required for making out the purported *prima facie* case of obviousness.

Objective evidence of non-obviousness must not be considered in isolation from the other *Graham* factors.  *See Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013).  In this case, the objective evidence of unexpected results informs the process of considering whether a rationale exists for combining references to make a showing of obviousness.  Specifically, Appellant's evidence

32

of unexpected results supports disclosure in the prior art itself suggesting that the results of the Proposed Combination would have been unexpected and unpredictable.  **Thus in the present case the objective evidence of unexpected results not only shows that the purported *prima facie* case of obviousness was not a strong case, it entirely contradicts the finding that the results of the Proposed Combination would have been predictable and confirms the prior art evidence showing that those results would not have been predictable.**

The objective evidence present in this case is clearly probative on the issue of whether the result of the Proposed Combination was predictable.  The Board's failure to consider the objective evidence as it relates to and informs the legal conclusion of obviousness represents an error as a matter of law.

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For the foregoing reasons the Board's obviousness decisions as to all claims

of the Application should be reversed.

Respectfully Submitted


Date:   February 18, 2014          By:   /s/ Russell D. Culbertson
                                        Russell D. Culbertson
                                        The Culbertson Group, P.C.
                                        3355 Bee Cave Road, Suite 604
                                        Austin, Texas 78746
                                        rculbertson@tcg-ipl.com
                                        (512) 327-8932 (voice)
                                        (512) 327-2665 (fax)

                                        *Attorney for Appellant*

# ADDENDUM

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/363,419 | 02/27/2006 | Eldon Roth | 317.1036002 | 6956 |

35236     7590     06/21/2013

The Culbertson Group, P.C.
3355 Bee Cave Road, Suite 604
Austin, TX 78746

| EXAMINER |
|---|
| STULII, VERA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/21/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rculbertson@tcg-ipl.com
caleman@tcg-ipl.com
rculbertson@sbcglobal.net

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL
BOARD
_____

*Ex parte* ELDON ROTH
_____

Appeal 2012-007059
Application 11/363,419
Technology Center 1700
_____

Before ROMULO H. DELMENDO, KAREN M. HASTINGS, and
DONNA M. PRAISS, *Administrative Patent Judges*.

HASTINGS, *Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2012-007059
Application 11/363,419

Appellant appeals under 35 U.S.C. § 134 from the Examiner's non-final rejection of claims 1-10 and 12-20 under 35 U.S.C. § 103(a) as unpatentable over the combined prior art of Roth (US 5,871,795 issued Feb. 16, 1999)[1], Ludwig (US 5,436,017 issued July 25, 1995), and Langen (US 5,012,728 issued May 7, 1991). App. Br. 4. An oral hearing was conducted on June 13, 2013. We have jurisdiction over the appeal pursuant to 35 U.S.C. § 6(b).

As indicated by Appellant, our previous Decision on Appeal, and Decision on Request for Rehearing, for related Appeal 2008-001998 affirmed the Examiner's decision to reject the claims then on appeal. This previous decision was affirmed by the Court of Appeals for the Federal Circuit in Docket No. 2009-1223 (e.g., Related Proceedings Appendix, App. Br. 76-98).[2]

## ANALYSIS

Upon consideration of the evidence on this record and each of Appellant's contentions, we find that the preponderance of evidence supports the Examiner's conclusion that the subject matter of Appellant's claims is unpatentable over the applied prior art[3]. We determine that, after

---

[1] Roth is also the inventor of the instant application.

[2] The main difference in the claimed subject matter was that claim 1 in the previous case included treatment of "a meat product" per se, whereas claims 1, 7 and 14 in this appeal are directed to treatment of a "meat product comprising a steak, roast, or filet, or a carcass portion larger than an individual steak, roast, or filet".

[3] Appellant's arguments mainly focus on claim 1. The arguments are directed to the common feature of the independent claims 1, 7 and 14 (App. Br. 6-10). To the extent the features of the independent claims 7 and 14 and

Appeal 2012-007059
Application 11/363,419

consideration of all of the evidence of record, including the Dickson and

Morgan Declarations regarding unexpected results (both filed April 30,

2010) and the two Jochum Declarations regarding commercial success (filed

April 30, 2010 and Jan. 24, 2011, respectively), that the evidence of record

tending to establish the obviousness of the claimed subject matter outweighs

any evidence of record that may tend to indicate the non-obviousness

thereof.

Accordingly, we sustain the above rejections based on the findings of

fact, conclusions of law, and rebuttals to arguments expressed by the

Examiner in the Answer.

We add the following for emphasis. Appellant's main arguments, that

one of ordinary skill in the art "would have expected injecting an ammonium

hydroxide solution into the interior of a cut of meat . . . to have damaged the

meat" and that "the actual result of . . . (a commercially successful and

objectively desirable product) [is] unexpected", (App. Br. 4; *see also* App.

Br. 9), are unavailing. Notably, Appellant's repeated focus that Roth only

exposes the surfaces of meat to ammonium hydroxide and not the interior

(*id.* at 6; Ans. 8) fails to consider the prior art as a whole. It is well

established that ordinary creativity is presumed on the part of one of

ordinary skill in the art. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,

421 (2007) ("[a] person of ordinary skill is also a person of ordinary

creativity, not an automaton."). As pointed out by the Examiner, Ludwig

exemplifies injecting an antibacterial solution into meat, such as hams (Ans.

---

the dependent claims have been separately argued, we find that the
preponderance of the evidence supports the Examiner's findings and
conclusions of obviousness (*id.*; Ans. 5-22).

Appeal 2012-007059
Application 11/363,419

7), and Langen exemplifies an injection needle assembly for injecting a fluid into a meat product (Ans. 8). Appellant has not provided any persuasive technical reasoning or evidence that an artisan would not have, using no more than ordinary creativity, used the well-known alternative method of injecting an antibacterial solution into the interior of a cut of meat as exemplified in Ludwig to yield predictable results of reducing bacterial growth using the antibacterial ammonium hydroxide solution of Roth (*see*, *e.g.*, Ans. 8). *See KSR*, 550 U.S. at 415-16 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."). The analysis need not seek out precise teachings directed to the specific subject matter of the claim, for it is proper to take account of the inferences and creative steps that a person of ordinary skill in the art would employ. *Id.* at 418.

*Unexpected Results*

The burden of showing unexpected results rests on the person who asserts them by establishing that the difference between the claimed invention and the closest prior art was an unexpected difference. *See In re Klosak*, 455 F.2d 1077, 1080 (CCPA 1972); *Ex parte Ishizaka*, 24 USPQ2d 1621, 1624 (BPAI 1992). Further, the showing of unexpected results must be commensurate in scope with the claims. *See In re Peterson*, 315 F.3d 1325, 1330-31 (Fed. Cir. 2003). Finally, unexpected results must be established by factual evidence. *See In re Geisler*, 116 F.3d 1465, 1470-71 (Fed. Cir. 1997).

No such factual showing of unexpected results is apparent on this record.

Appeal 2012-007059
Application 11/363,419

A preponderance of the evidence supports the Examiner's position
that Dr. Dickson's and Dr. Morgan's Declarations are not persuasive of
surprising or unexpected results since:

> the [disadvantages and] properties of ammonium hydroxide
> solution were well known prior to the invention of [Roth] '795
> Patent. Still, [Roth] '795 Patent discloses treatment of the
> exterior and interior of a ground meat product with ammonium
> hydroxide solution. The toxicity and odor of ammonium
> hydroxide do not change based on the method of application.
> These characteristic [*sic*] remain the same regardless of the
> method of application. Therefore, since Roth discloses
> inhibiting of bacterial growth in meat by treatment of meat
> using antibacterial gases and liquids (i.e. ammonium
> hydroxide), and Ludwig et al discloses inhibiting bacterial
> growth in meat by injecting the meat with antibacterial solution,
> one of ordinary skill in the art would have been motivated to
> modify Roth and substitute one conventional method of
> introducing antibacterial solution for another conventional
> method of introducing an antibacterial solution.

Ans. 12-13. *See also*, *Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir.
2003) ("In giving more weight to prior publications than to subsequent
conclusory statements by experts, the Board acted well within [its]
discretion.").

With respect to Appellant's allegation of commercial success, the
burden also rests with Appellant to establish that the "'asserted commercial
success of the product must be due to the merits of the claimed invention
beyond what was readily available in the prior art'" *See Asyst Techs., Inc. v.
Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *quoting J. T. Eaton &
Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). A
primary consideration in demonstrating actual commercial success is if sales

Appeal 2012-007059
Application 11/363,419

of the claimed invention have produced a substantial share of the marketplace. *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

On this record, Appellant has not shown what percentage of the market he has acquired (*see both* Jochum Declarations).

Moreover, even if the evidence proffered sufficiently demonstrates commercial success, that success is only relevant in the obviousness context if there is proof that the success results from the unique characteristics of the claimed invention--as opposed to other economic and commercial factors unrelated to the quality of the claimed invention. *In re Huang*, 100 F.3d at 140.

We determine that Appellant has not met the burden for showing commercial success, and/or unexpected results, for at least the reasons aptly provided by the Examiner (Ans. 12-14, 17, 21). The facts and law support the position of the Examiner.

In addition, we emphasize that, although secondary considerations such as unexpected results must be taken into account, they do not necessarily control the obviousness conclusion. *See Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001, 1009 (Fed. Cir. 2009) ("[e]vidence of unexpected results and other secondary considerations will not necessarily overcome a strong prima facie showing of obviousness"); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007) ("[T]his secondary consideration does not overcome the strong showing of obviousness in this case. Although secondary considerations must be taken into account, they do not necessarily control the obviousness conclusion."); *see also, Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 769 (Fed. Cir. 1988).

Appeal 2012-007059
Application 11/363,419

Here, the case of obviousness is so strong that Appellant's alleged unexpected results and commercial success are ultimately insufficient (*see also*, *e.g.*, Ans. 21).

The decision of the Examiner is affirmed.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).

AFFIRMED

bar

Case: 14-1162 Document: 11 Page: 50 Filed: 02/18/2014

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/363,419 | 02/27/2006 | Eldon Roth | 317.1036002 | 6956 |

35236          7590          09/18/2013
The Culbertson Group, P.C.
3355 Bee Cave Road, Suite 604
Austin, TX 78746

| EXAMINER |
|---|
| STULII, VERA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/18/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rculbertson@tcg-ipl.com
caleman@tcg-ipl.com
rculbertson@sbcglobal.net

PTOL-90A (Rev. 04/07)

44

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL
BOARD
_____

*Ex parte* ELDON ROTH
_____

Appeal 2012-007059
Application 11/363,419
Technology Center 1700
_____

Before ROMULO H. DELMENDO, KAREN M. HASTINGS, and
DONNA M. PRAISS, *Administrative Patent Judges*.

HASTINGS, *Administrative Patent Judge*.

DECISION ON REQUEST FOR REHEARING

Appeal 2012-007059
Application 11/363,419

This is in response to a Request for Rehearing ("Request"), dated
August 21, 2013, of our Decision, mailed June 21, 2013 ("Decision"),
wherein we affirmed the Examiner's § 103 rejection of all appealed claims.

We have reconsidered our Decision of June 21, 2013, in light of
Appellant's comments in the Request for Rehearing, and we find no error in
the disposition of the § 103 rejection.

We have thoroughly reviewed the arguments set forth by Appellant in
the Request. However, we remain of the opinion that the subject matter of
the appealed claims is properly rejected and unpatentable under 35 U.S.C.
§ 103(a).

Appellant argues that the Decision relies upon various
"misapprehensions or oversights" regarding the alleged unexpected
results of the claimed invention as urged by Appellant (Request 2). We
disagree.

Appellant first contends that because of our concluding statement
regarding the strength of the prima facie case of obviousness, it appears
that we improperly weighed the evidence (Request 4:2-4). To the
contrary, we explicitly stated that

> . . . after consideration of all of the evidence of record,
> including the Dickson and Morgan Declarations regarding
> unexpected results (both filed April 30, 2010) and the two
> Jochum Declarations regarding commercial success (filed April
> 30, 2010 and Jan. 24, 2011, respectively), that the evidence of
> record tending to establish the obviousness of the claimed
> subject matter outweighs any evidence of record that may tend
> to indicate the non-obviousness thereof.

(Decision 2-3).

Appeal 2012-007059
Application 11/363,419

Further, we stated that we sustained the Examiner's rejections "based on the findings of fact, conclusions of law, and rebuttals to arguments expressed by the Examiner in the Answer" (*id.* at 3).

Appellant's arguments in the Request for Rehearing appear to be no more than a repeat of the points already made in the Briefs. To the extent that one may consider Dr. Dickson's and Dr. Morgan's opinions as to the qualitative properties of meat treated in accordance with the claimed invention as providing factual evidence (e.g., the meat has "no odor and has otherwise desirable qualities" Request 9:6-8; *see also* Request 8, 9), this evidence is not persuasive of unexpected results for reasons already stated in the record, including, for example only:

> the [disadvantages and] properties of ammonium hydroxide solution were well known prior to the invention of [Roth] '795 Patent. Still, [Roth] '795 Patent discloses treatment of the exterior and interior of a ground meat product with ammonium hydroxide solution.

(Decision 5, *quoting* Ans. 12).

Accordingly, we are not convinced that the alleged "unexpected result" of meat having no undesirable odor from a treatment with ammonium hydroxide is truly "unexpected". Even assuming, however, that Appellant is correct that the result is unexpected, our position remains that while

> unexpected results must be taken into account, they do not necessarily control the obviousness conclusion. *See Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001, 1009 (Fed. Cir. 2009) ("[e]vidence of unexpected results and other secondary considerations will not necessarily overcome a strong prima facie showing of obviousness"); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007) ("[T]his secondary consideration does not overcome the strong showing of obviousness in this case. Although secondary considerations

Appeal 2012-007059
Application 11/363,419

> must be taken into account, they do not necessarily control the
> obviousness conclusion.")

(Decision 6).

To the extent Appellant is contending that *Plantronics, Inc. v. Aliph, Inc.*, 107 USPQ2d 1706 (Fed. Cir. 2013) is in conflict with this fundamental principle (Request 2-4), we disagree. We did not, as apparently the district court did in *Plantronics*, reach a conclusion of obviousness "before considering objective indicia of nonobviousness." *Id*. at 1715. Rather, as required under 35 U.S.C. § 103(a), we considered obviousness in light of all the evidence, including secondary considerations in support of nonobviousness.

Thus, we decline to modify our Decision to affirm the Examiner's § 103 rejection of the appealed claims.

In conclusion, based on the foregoing, Appellant's Request is granted to the extent that we have reconsidered our Decision, but is denied with respect to making changes to the final disposition of the rejections therein.

This Decision on the Request for Rehearing incorporates our Decision, mailed June 21, 2013, and is final for the purposes of judicial review. *See* 37 C.F.R. § 41.52 (a)(1).

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(1)(v)(2010).


<u>DENIED</u>

bar

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 18th day of February 2014, I caused the

foregoing Brief of Appellant to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Nathan K. Kelley
Robert J. McManus
Joseph Matal
U.S. Patent and Trademark Office
Post Office Box 1450
Mail Stop 8
Alexandria, VA 22213
nathan.kelley@uspto.gov
robert.mcmanus@uspto.gov
joseph.matal@uspto.gov

*Counsel for Appellee*

/s/ Russell D. Culbertson
Russell D. Culbertson
The Culbertson Group, P.C.
3355 Bee Cave Road. Suite 604
Austin, Texas  78746
Voice:      (512) 327-8932
Fax:         (512)327-2665
Email:      rculbertson@tcg-ipl.com

*Counsel for Appellant*

FORM 19.   Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☐   The brief contains [       7,840      ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐   The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☐   The brief has been prepared in a proportionally spaced typeface using
[                Microsoft Word 2013                ] in
[            Times New Roman,14 pt             ], or

☐   The brief has been prepared in a monospaced typeface using
[        *state name and version of word processing program*        ] with [
[        *state number of characters per inch and name of type style*        ].

/s/Russell D. Culbertson
_____
(Signature of Attorney)
Russell D. Culbertson
_____
(Name of Attorney)
Attorneys for Appellant
_____
(State whether representing appellant, appellee, etc.)
February 18, 2014
_____
(Date)

[ Reset Fields ]

142